## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Edward A. Henderson, | Case No. 19-cv-135 (MJD/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| State of Minnesota, | |
| Defendant. | |

---

This matter is before the Court on Defendant State of Minnesota's ("the State" or "Defendant") Motion to Dismiss (Dkt. 14) and Plaintiff Edward A. Henderson's ("Henderson" or "Plaintiff") Motion to Amend the Complaint (Dkts. 24, 36). The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends denying Plaintiff's Motion to Amend and granting Defendant's Motion to Dismiss.

## I.     BACKGROUND

### A.     Prior State Court Action

The present action relates to Henderson's marital dissolution and child custody dispute that was adjudicated in Hennepin County, Minnesota. *See In re Marriage of Christine Elaine Henderson & Edward Andrew Henderson*, Case No. 27-FA-13-4239 (Hennepin Cty. Dist. Ct.) (filed June 11, 2013). Henderson was pro se for much of that state court action. (*See generally* Dkt. 18-1, Exs. B-L, N-O.) Before pre-trial, the parties

reached an agreement on matters including the dissolution of marriage, custody and parenting time schedule, miscellaneous parenting issues relating to joint legal custody, spousal maintenance, and the division of assets.  (Dkt. 18-1 at Ex. B at 8-24.)[1]  That agreement was memorialized in the state court's Amended Findings of Fact, Conclusions of Law, Order for Judgment, Judgment and Decree ("Judgment and Decree") that issued on February 26, 2014.  (*Id.*)

After the state court issued its Judgment and Decree, the parties had disagreements over custody-related matters.  (*Id.*, Exs. F, G, J, N.)  On June 18, 2014, Henderson's ex-wife asked the state court to temporarily modify Henderson's parenting time with their minor child, alleging that Henderson was "not providing the minor child with safe and sanitary living conditions."  (*Id.*, Ex. J at 114-15.)  In response, Henderson sought permission to relocate outside of Minnesota with the child.  (*Id.*, Ex. J at 114.)  On July 3, 2014, Henderson filed a pro se motion in support of this request attaching letters of support.  (*Id.*, Ex. O.)  Although Henderson's motion was untimely, the state court gave them[2] additional time and the opportunity to respond to their ex-wife's motion and

---

[1]    The public court record from Henderson's marital dissolution and child custody case can be found at Docket No. 18-1.  Docket No. 18-1, which includes various exhibits, contains public court records relevant to this action.  "The district court may take judicial notice of public records and may thus consider them on a motion to dismiss."  *Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) (citing *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 802-03 (8th Cir. 2002)); *Levy v. Ohl*, 477 F.3d 988, 992 (8th Cir.2007) (state court records).  The Court's citations to Docket No. 18-1 use the CM/ECF pagination as well as the exhibit lettering, because the document is a compilation of exhibits.

[2]    There is evidence in the record that Henderson prefers to be referred to as "they." (*See* Dkt. 25.)  The Court therefore uses the pronouns "they/them/theirs" to refer to Henderson.

submit the factual basis for the request to move.  (*Id.*, Ex. J at 115.)  Henderson took the

position that their house, formerly the marital home, was not as clean as it could be

because their ex-wife had left the marital home in disarray and submitted affidavits

supporting their position that their ex-wife did not keep a clean residence.  (*Id.*, Ex. J at

116.)  On August 12, 2014, the state court rejected Henderson's request to move and

appointed a *guardian ad litem* for the minor child because it was concerned about

Henderson's ex-wife's allegations regarding Henderson's home and about the cleanliness

of the ex-wife's home based on affidavits submitted on behalf of Henderson.  (*Id.*, Ex. J

at 116.)  The state court held a hearing on Henderson's and their ex-wife's motions on

December 29, 2014, at which Henderson was represented by counsel.  (*Id.*, Ex. C at 26.)

The *guardian ad litem* recommended altering the parenting time schedule.  (*Id.* at 27.)  In

an order dated February 12, 2015, the state court considered the *guardian ad litem*'s

detailed report of in-home investigations and set forth a temporary parenting schedule.

(*Id.*, Ex. C at 26-33.)  The state court set a review hearing regarding the temporary

parenting time schedule for July 1, 2015 at 9:00 a.m. in that order.  (*Id.*, Ex. C at 32.)

Henderson, through counsel, had also requested reconsideration of a prior court

order, which required them to pay a portion of their ex-wife's attorney's fees.  (*Id.*, Ex. C

at 31.)  The state court denied Henderson's request in the February 12, 2015 order

because their attorney "did not follow Rule 115.11, which governs motions for

reconsideration."  (*Id.*, Ex. C at 31.)  On April 13, 2015, Henderson's counsel sought

permission to withdraw representation of Henderson due to "a breakdown in

communication."  (*Id.*, Ex. K at 129.)

On July 1, 2015, the state court held the scheduled hearing on parenting time. (*Id.*, Ex. G at 69.) Henderson, who was pro se, did not appear, although they were properly served with their ex-wife's motion. (*Id.*, Ex. G at 69, 71.) In its August 27, 2015 parenting time order, the state court noted that the *guardian ad litem* had not been able to visit Henderson's new residence because Henderson had not provided the *guardian ad litem* with the address and that Henderson had not participated in a "Bridging of Parent Conflict" program in violation of an earlier order. (*Id.*, Ex. G. at 71.) The state court instituted a parenting time schedule where Henderson's parenting time was every other weekend from Friday at the conclusion of the child's school session to Sunday at 6:00 p.m. (*Id.*, Ex. G at 73.) The state court also ordered Henderson to pay certain actual expenses in the amount of $7,100.46 associated with the marital home and its sale, consistent with the parties' agreement as set forth in the Judgment and Decree. (*Id.*, Ex. G at 70-71.)

On March 9, 2016, the state court held a hearing on Henderson's ex-wife's motion for the right to claim their minor child as a dependent on her tax returns every year[3] because Henderson had not paid the $7,100.46, nor had Henderson paid $160 of a conduct-based attorney's fees award assessed against Henderson on October 16, 2014.[4] (*Id.*, Ex. D at 37; *see id.*, Ex. G at 73 (describing award).) Henderson appeared pro se.

---

[3]     The Judgment and Decree provided that Henderson could claim their minor child in odd years and Henderson's ex-wife could claim their minor child in even years. (Dkt. 18-1, Ex. B at 13.)

[4]     Henderson refers to an award of $800 for "stalling" in their Proposed Amended Complaint (Dkt. 36 at 2), but based on the record they appear to be referring to the $200 fee award, of which they paid $40, reducing it to $160 (Dkt. 18-1, Ex. G at 73).

(*Id.*, Ex. D at 37.)  On March 3, 2016, Henderson filed an opposition to the motion that informed the state court that they suffered from dyslexia, claimed the $160 award had been imposed due to "stalling" and asking that it be "put to rest" as an accommodation, argued that they were counting on claiming the minor child on their tax returns, and stated that they and their ex-wife had not been following the state court's orders (offering message printouts as evidence).  (*Id.*, Ex. L.)  In the order granting the ex-wife's motion, the state court noted that Henderson had requested an accommodation from the state court, stating that a variety of learning disabilities impaired their ability to represent themself.  (*Id.*, Ex. D at 38.)  The state court "advised [Henderson] to consult with an attorney and to contact the self-help center for assistance with completing and filing any paperwork."  (*Id.*)

Custody disputes between the parties continued over the next few years.  For example, the state court denied without prejudice Henderson's motion to modify regular parenting time after a hearing on April 6, 2016 at which Henderson appeared pro se.  (*Id.*, Ex. E at 44.)  Henderson filed a motion in connection with this request along with supporting affidavits.  (*Id.*, Ex. N.)  Although the state court did not consider those affidavits because they were unsigned and unnotarized, it addressed Henderson's arguments in its order.  (*See id.*, Ex. E.)

In December 2017, the state court denied Henderson's motion to modify the parenting time to a 50/50 schedule after a hearing on November 7, 2017 at which Henderson appeared pro se.  (*Id.*, Ex. F at 49, 60.)  That order reflected that Henderson and their ex-wife were able to reach agreement regarding modification of holiday and

vacation parenting time.  (*Id.*, Ex. F at 49.)  The state court did slightly modify the parenting time schedule such that Henderson's weekends with their child ended on Monday at school rather than at 6:00 p.m. on Sunday.  (*Id.*, Ex. F at 60-61.)

On May 16, 2019, Henderson filed a document with this Court stating that "the matter of Child Care Time has been resolved by the Plaintiff outside of the MN Family Court System" in that Henderson and their ex-wife had agreed to the "week-on/week-off schedule which is what the Plaintiff sought in their last 2 Court hearings and what the Plaintiff would have suggested in the original hearing had they a) understood that they were to suggest a schedule that day and b) not been forced to make such an impactful choice while in a state of trauma on the day immediately following their learning of their best friend's suicide."  (Dkt. 25 at 4-5.)

## B.   Procedural History

Turning to the present case, on January 17, 2017, Henderson filed a Complaint naming the "State of MN" as the sole defendant.  (Dkt. 1.)  Henderson asserts claims under "Title 2 ADA, 14th Amendment, and Due Process."  (*Id.* at 3.)  The Complaint was accompanied by various exhibits in support of Henderson's claims.  (*See* Dkt. 1-1; Dkt. 3; Dkt. 4; Dkt. 5.)[5]

---

[5]   Exhibits to the Complaint include a description of Henderson's legal allegations, an email from a third-party, the Register of Actions for Henderson's state court case and select pleadings, a screenshot from the State of Minnesota judicial branch website, Henderson's special education paperwork, Henderson's tax and loan records, Henderson's Parents Day Award, and other articles, legal excerpts, memorandums, and oral argument transcripts from various Supreme Court cases.  (*See* Dkt. 1-1; Dkt. 3; Dkt. 4; Dkt. 5; Dkt. 5-1; Dkt. 5-2; Dkt. 5-3.)

Henderson claims that "in denying an ADA accommodation the MN Family Court of Hennepin County Minneapolis denied [them] Due Process of Law." (Dkt. 1-1 at 1.) Henderson alleges that they suffer from PTSD, dyslexia, and ADHD, and "started asking for accommodation before 12/28/2014." (*Id.*) Henderson, who alleges that they have learning disabilities, states that they were unable to "properly fill out court paperwork" and that "a person needs to understand what is going on, know what it is that they are filling out, and have the ability to communicate with reasonable effectiveness their assertion, to have Due Process of Law." (*Id.*)

Next, the Complaint describes Henderson's visit to the Attorney General's Office in July 2018. (*Id.* at 2.) Henderson explains that they were directed to the offices downtown and they stated to "Consumer Services" that "due to not being accommodated my child was taken." (*Id.*)

Finally, the Complaint lists what Henderson refers to as "[o]ther fun quotes" from judges, which are alleged to have been made during the state court action, including "Your dyslexia may bar you from being a fit parent," "There are no accommodations available," and "how are you a 6ft man afraid of a 5ft woman." (*Id.*)

On February 27, 2017, the Court allowed Henderson to proceed *in forma pauperis* with respect to their claims against the State. (Dkt. 6.) On April 1, 2019, Henderson filed a motion requesting various forms of relief. (Dkt. 11.)[6] Henderson's April 1

---

[6]    Henderson's motion requested: (1) a hearing on Defendant's Motion to Dismiss; (2) that the Court issue "an OFP" that the State "not have contact with friends, acquaintances, or family of the Plaintiff" until the hearing; (3) appointment of counsel; and (4) that the State be "fined for legal fees for this hearing." (Dkt. 11 at 1-2.)

motion relates to a March 27, 2019 letter from Kathryn Landrum, Assistant Attorney General, informing Henderson that the State anticipated filing a motion to dismiss and requesting a meet and confer on the motion.  (Dkt. 11; *see* Dkt. 12.)

On April 10, 2019, the State moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.  (Dkt. 14.)

On April 18, 2019, the Court denied Henderson's motion requesting various forms of relief (Dkt. 11) and set a briefing schedule for the State's Motion to Dismiss (Dkt. 22).

On May 16, 2019, Henderson filed a document having sections titled "Preliminary Injunction Motion," "ARGUMENT Regarding Motion to Dismiss Respondent's Motion to Dismiss," and "Request for Counsel."  (Dkt. 24.)[7]  The document contained a request for "Approval to amend and add to original filing of complaint for Court File No. 19-cv-00135 (MJD/ECW), including information from and pertaining to the transcripts of *Christine XXXXX & Edward XXXXX*, Case No. 27-FA-13-4239," which the Court construed as seeking leave to amend.  (Dkt. 24 at 1; Dkt. 29 at 1.)  On May 23, the Court denied leave to amend without prejudice and directed Henderson to re-file in compliance with the Local Rules (Dkt. 29 at 2); denied Henderson's Request for Counsel (*id.* at 3-5); and deferred ruling on Henderson's request for preliminary injunctive relief in view of Henderson's request for leave to amend (*id.* at 5).

---

[7]    Docket No. 23 and Docket No. 24 appear identical.  (*Compare* Dkt. 23, *with* Dkt. 24.)

On May 30, 2019, the State filed a reply brief in support of its Motion to Dismiss and in opposition to Henderson's request for preliminary injunctive relief.  (Dkt. 30.)

On June 5, 2019, Henderson filed a document containing "Proposed Amended Claim[s]" (Dkt. 36)[8] along with a letter (Dkt. 35) asserting that Docket No. 24 was "not a motion to amend."  On June 12, 2018, the State filed a memorandum in opposition to the "Proposed Amended Claim[s]" in the event that the Court construed it as a motion to amend.  (Dkt. 38.)

On July 2, 2019, Henderson filed a letter seeking answers to a variety of legal questions including how to address the State's Motion to Dismiss and whether they could appeal this Court's decision to deny them counsel.  (Dkt. 41.)  The Clerk of Court responded to Henderson via letter that they were unable to provide legal assistance.  (Dkt. 42.)  In the July 22 Order, the Court directed Henderson to the documents provided by the Clerk of Court and indicated it would address the State's Motion to Dismiss and Henderson's Motion to Amend collectively.  (Dkt. 43 at 1.)

## C.    The Proposed Amended Complaint

The "Proposed Amended Claim[s]" (which the Court refers to as a "Proposed Amended Complaint") asserts an Americans with Disabilities ("ADA") claim (Dkt. 36 at 1-4), a Due Process claim under the Fifth and Fourteenth Amendments and for "Arbitrary Vagueness" (*id*. at 4-5), an Equal Protection claim under the Fourteenth Amendment (characterized as an "Equal Access" claim) (*id*. at 5-6), a First Amendment claim (*id*. at

---

[8]    The Court describes the Proposed Amended Complaint in detail below.  *See infra* Section I.C.

7-8), and a Title IX claim (*id.* at 8-9).  The Proposed Amended Complaint is directed

only to the State.  (*See* Dkt. 36 at 17 (asking the Court to "impose on the State of MN

whatever they deem necessary and equitable"); *id.* at 21 ("Redline" page does not

identify any additional defendants).)

With respect to Henderson's proposed ADA claim, Henderson alleges that they

were "not made aware of the existence of an ADA Coordinator," were told by two judges

that there are no accommodations available for their disability, and that "[t]he Judges, the

Self-Help Desk and the MN Family Legal Help Office did not make available

information about possible accommodations or how to seek them."  (*Id.* at 1.)  Henderson

also alleges that the Volunteer Lawyers Network and other legal aid resources[9] refused to

help them, that the ADA Coordinator told Henderson that she could not propose potential

accommodations as this was legal information and she was not a lawyer, and that

multiple "venues such as the Attorney General's Office and the Minneapolis Court House

stated that the ADA does not cover invisible disabilities within Family Court."[10]  (*Id.*)

Henderson alleges that they were discriminated against by having to decide a

child-care scheduling issue even though they did not understand the paperwork and had

just found out the day before that their best friend committed suicide.  (*Id.* at 1-2.)

Henderson claims that the reduction in parenting time after the July 1, 2015 hearing at

which they did not appear was discriminatory because, after Henderson

---

[9]     Henderson did not allege that the Volunteer Lawyers Network or the other legal
aid resources are state actors.

[10]     Henderson defines "invisible disabilities" as "learning disabilities and mental
health disabilities."  (Dkt. 36 at 17.)

"missed/misplaced a change of time notice (organization skills/ADHD) . . . and arrived one hour late," they were told they could do nothing except await the state court's decision.  (*Id.* at 4; *see also* Dkt. 18-1, Ex. G at 69 (August 27, 2015 order on parenting time).)

While in court, Henderson alleges that they were "frequently kept to oral argument time limits well below opposing counsel," were not allowed to make objections during oral argument, and were denied access to their oral argument time.  (Dkt. 36 at 3.)  The claim alleges a number of instances of discrimination, including the adverse rulings relating to parenting time, the order permitting Henderson's ex-wife to claim their minor child on her taxes, an $800 "fine" because Henderson's disabilities were perceived as "stalling,"[11] and also alleges that the state court drew negative inferences about Henderson due to their disabilities.  (*Id.* at 2-4.)  Finally, Henderson accuses the Minnesota Family Court of screening out indigent people and people with invisible disabilities "without the necessary accommodation of auxiliary aids to ensure communication."  (*Id.* at 3.)  Those methods include using a "complex, reading and writing system of communication," acceptance of paperwork that "clearly did not meet multiple legal standards," not having any method for notifying the ADA Coordinator when disabilities become apparent or accommodations are requested, and "Ad hoc, ineffective, discriminatory accommodations."  (*Id.*)

---

[11]    As discussed in footnote 4, it appears that Henderson may be referring to the $200 attorney's fees award from October 2014.

With respect to their proposed Due Process claim, Henderson alleges that their disabilities impeded their ability to effectively communicate in the mandated formats and that they were denied "reasonably effective access to the Judiciary of the MN Family Courts." (*Id.* at 5.) As a result, they lost time with their child, their job, and their property. (*Id.*) According to Henderson, the alleged violations of the ADA resulted in arbitrary and discriminatory enforcement of the law. (*Id.*)

The Proposed Amended Complaint also asserts an "Equal Access" claim, which the Court construes as an Equal Protection claim under § 1983. (*Id.* at 5-7.) Henderson alleges that they "did not have Equal Access to tools and resources available to non-Indigent peoples," including access to a person with knowledge of the courts, various technology and information resources, and time. (*Id.* at 6-7.) Henderson also complains that their paperwork was routinely accepted without meeting legal standards, which resulted in the state court refusing to consider the paperwork or negative inferences being drawn against Henderson, such as that Henderson "wasn't trying" or could not be a good parent due to an inability to navigate complex paperwork. (*Id.* at 5.)

In their proposed First Amendment claim, Henderson alleges that the *guardian ad litem*'s findings in the prior state court matter were "illegal under the existing and unchallenged child custody agreement." (*Id.* at 8.) Henderson also alleges that the *guardian ad litem* found that Henderson's child had a good relationship with them and that their home was safe and clean. (*Id.*)

12

Finally, in their proposed Title IX claim, Henderson alleges that the "MN Family Courts repeatedly demonstrated discrimination against women."[12] (*Id.* at 9.) They allege a number of instances where their ex-wife was given favorable treatment compared to them. (*Id.*)

Henderson seeks monetary damages and other various forms of relief. (*See id.* at 15-20.) For example, Henderson seeks "actual monetary damages" arising from financial losses incurred during the state court matter and that "all Judges, Media[]tors, Guardian Ad Litem staff and other MN Family Court staff receiv[e] training regarding the ADA and discrimination laws in MN as well as training on the needs of indigent people and people with invisible disabilities and how to best serve all litigants in compliance with the ADA." (*See, e.g.*, *id.* at 18-19.) Henderson also seeks punitive damages and that the State employ Henderson and their partner to design the requested policy changes and trainings. (*Id.* at 19.)

## D.     The Present Motions

The Eighth Circuit requires district courts to consider motions to amend the pleadings prior to ruling on any pending motions to dismiss. *See Pure Country Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 955 (8th Cir. 2002) ("[T]he district court ignored Pure Country's motion to amend, granted Sigma Chi's motion to dismiss the original complaint, and then denied Pure Country's motion to amend the complaint as moot. That approach, as a procedural matter, was plainly erroneous."). Accordingly, the Court will

---

[12]     Henderson states that they "presented for the first time as transgender" at the time of the *guardian ad litem* visits and "presented as a straight man" at the time of the "1st hearings." (Dkt. 36 at 8-9.)

13

first consider Henderson's Motion to Amend (Dkts. 24, 36)[13] before addressing the

State's Motion to Dismiss (Dkt. 14).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be

freely given when justice so requires."  The determination as to whether to grant leave to

amend is entrusted to the sound discretion of the trial court.  *See, e.g.*, *Niagara of*

*Wisconsin Paper Corp. v. Paper Indus. Union Mgmt. Pension Fund*, 800 F.2d 742, 749

(8th Cir. 1986) (citation omitted).  The Eighth Circuit has held that "[a]lthough

amendment of a complaint should be allowed liberally to ensure that a case is decided on

its merits . . . there is no absolute right to amend."  *Ferguson v. Cape Girardeau Cty.*, 88

F.3d 647, 650-51 (8th Cir. 1996) (citing *Thompson-El v. Jones*, 876 F.2d 66, 67 (8th Cir.

1989); *Chesnut v. St. Louis Cty.*, 656 F.2d 343, 349 (8th Cir. 1981)).

Denial of leave to amend may be justified by "undue delay, bad faith on the part of

the moving party, futility of the amendment or unfair prejudice to the opposing party."

*Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) (citing *Foman v. Davis*, 371

U.S. 178, 182 (1962)); *see also Hillesheim v. Myron's Cards and Gifts, Inc.*, 897 F.3d

953, 955 (8th Cir. 2018) (citation omitted) ("A district court's denial of leave to amend a

complaint may be justified if the amendment would be futile.").  "Denial of a motion for

leave to amend on the basis of futility means the district court has reached the legal

conclusion that the amended complaint could not withstand a motion to dismiss under

---

[13]    While a motion to amend is a non-dispositive motion, the Court includes it as part
of the present Report and Recommendation because the merits of the Motion to Amend
are inextricably intertwined with the Motion to Dismiss.

Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Accordingly, in reviewing a denial of leave to amend we ask whether the proposed amended complaint states a cause of action under the *Twombly* pleading standard . . . ."  *Zutz v. Nelson*, 601 F.3d 842, 850-51 (8th Cir. 2010) (citation and marks omitted); *see also In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007) ("[W]hen a court denies leave to amend on the ground of futility, it means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion.").

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks and citations omitted).  Thus, subject matter jurisdiction "is a threshold requirement which must be assured in every federal case."  *Turner v. Armontrout*, 922 F.2d 492, 493 (8th Cir. 1991).  Federal Rule of Civil Procedure 12(b)(1) permits a party to challenge whether the court has subject matter jurisdiction to hear the matter.  *Johnson v. United States*, 534 F.3d 958, 964 (8th Cir. 2008).  When considering a Rule 12(b)(1) motion, a district court may consider matters outside the pleadings.  *Satz v. ITT Fin. Corp.*, 619 F.2d 738, 742 (8th Cir. 1980).  "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist."  *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).

When deciding a Rule 12(b)(1) motion, the Court must first "distinguish between a 'facial attack' and a 'factual attack.'"  *Osborn*, 918 F.2d at 729 n.6 (quoting *Menchaca*

*v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).  "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).  In contrast, in a factual attack, the court makes "inquiries into and resolves factual disputes," *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002), and is free to "consider[ ] matters outside the pleadings," *Osborn*, 918 F.2d at 729 n.6.  The nonmoving party in a factual challenge does not enjoy the benefit of Rule 12(b)(6) safeguards.  *Id.*  "If the asserted basis of federal jurisdiction is patently meritless, then dismissal for lack of jurisdiction is appropriate."  *Biscanin v. Merrill Lynch & Co., Inc.*, 407 F.3d 905, 907 (8th Cir. 2005).

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true.  *See Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  In addition, a court must afford the plaintiff all reasonable inferences from those allegations.  *See Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Federal Rule of Civil Procedure 8 and meet the principles articulated by the United States Supreme Court in *Iqbal* and *Twombly*.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does

demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations
omitted).  A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of
the elements of a cause of action will not do.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 555 (2007)).  Thus, to "survive a motion to dismiss, a complaint must
contain sufficient factual matter, accepted as true, to 'state a claim to relief that is
plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial
plausibility when the plaintiff pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting
*Twombly*, 550 U.S. at 556).  "[T]he plausibility standard, which requires a federal court
complaint to state a claim for relief that is plausible on its face, . . . asks for more than a
sheer possibility that a defendant has acted unlawfully."  *Ritchie v. St. Louis Jewish Light*,
630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted).
"Determining whether a complaint states a plausible claim for relief will, . . . be a
context-specific task that requires the reviewing court to draw on its judicial experience
and common sense."  *Iqbal*, 556 U.S. at 679 (citation omitted).

Following *Twombly* and consistent with *Iqbal*, the Eighth Circuit explained:

While a plaintiff need not set forth "detailed factual allegations," *Twombly*,
127 S. Ct. at 1964, or "specific facts" that describe the evidence to be
presented, *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007)
(per curiam), the complaint must include sufficient factual allegations to
provide the grounds on which the claim rests.  *Twombly*, 127 S. Ct. at 1965
n. 3.  A district court, therefore, is not required "to divine the litigant's intent
and create claims that are not clearly raised," *Bediako*, 354 F.3d at 840, and
it need not "conjure up unpled allegations" to save a complaint.  *Rios v. City
of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotation omitted).

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009). The Eighth Circuit has interpreted the "face" of the complaint as including public records and materials embraced by the complaint as well as materials attached to the complaint. *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012).

### III.    HENDERSON'S MOTION TO AMEND

It is somewhat unclear whether Henderson is actually seeking to file an amended complaint. In the document containing their "Proposed Amended Claim[s]," Henderson appears to state that they do not seek to amend the complaint unless permitted to include information from transcripts of their prior state court action that are not currently in their possession. (Dkt. 36 at 21.) Along the same lines, Henderson stated that Docket No. 24 was not a motion to amend, although they sought "Approval to amend and add to original filing of complaint" once they obtained certain transcripts of their prior state court action. (Dkt. 35.) The State argues that "[g]iven that Plaintiff does not currently desire to amend the Complaint, the motion entered as Docket Entry 24 should be denied," and if the Court determines that Henderson has in fact filed a motion to amend, the Court should deny it as "procedurally improper and futile." (*Id.* at 1.) In view of the Court's obligation to liberally construe pro se filings, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*per curiam*), and because Henderson has filed "Proposed Amended Claim[s]," the Court has construed Docket Nos. 24 and 36 as a Motion to Amend where Docket No. 36 is the

Proposed Amended Complaint and Docket No. 24 sought leave to amend (*see* Dkt. 43 at 1).[14]

As described above, the Proposed Amended Complaint alleges an ADA claim with additional factual allegations as compared to the Complaint (Dkt. 36 at 1-4), alleges a Due Process claim under the Fifth and Fourteenth Amendments and for "Arbitrary Vagueness" with additional factual allegations as compared to the Complaint (*id*. at 4-5), seeks to add what appears to be an Equal Protection claim under the Fourteenth Amendment (characterized as an "Equal Access" claim) (*id*. at 5-6), seeks to add a First Amendment claim (*id*. at 7-8), and seeks to add a Title IX claim (*id*. at 8-9).

The State argues that Henderson's Motion to Amend should be denied as futile. (Dkt. 38 at 3-5.)  The State contends that all of the proposed claims are futile under the *Rooker-Feldman* doctrine and that Henderson's proposed § 1983 claims are futile due to Eleventh Amendment immunity and because the State is not a "person" subject to suit under § 1983.[15]  (*Id.* at 3.)  The State also contends that the claims are futile because

---

[14]    A "pro se complaint should be given liberal construction" which means "if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 786 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

[15]    In addition, the State contends that Henderson's claims should be dismissed because the State is not a proper party to this lawsuit and because the doctrine of absolute judicial immunity bars Henderson's claims.  The Court does not address the State's judicial immunity argument because Henderson has not named any judges as defendants. Rather, Henderson has only named the State as a defendant, and it is clear that they want to sue the State.  (*See* Dkts. 1, 36.)  The State argues that Henderson "paints with too broad a brush" by naming only the State rather than the specific parties actually involved in the facts of the state court case. (Dkt. 17 at 9.)  The Court notes that Henderson alleged "systemic" violations of the ADA and constitutional violations and alleged that

Henderson has failed to state a claim as required under Rule 8.[16]  (*Id.*)  The Court

addresses these arguments below.[17]

### A.    *Rooker-Feldman* **Doctrine**

The State argues Henderson's Motion to Amend should be denied because their

proposed claims are barred by the *Rooker-Feldman* doctrine.  (Dkt. 38 at 3, 4.)  Under the

*Rooker-Feldman* doctrine, federal courts lack subject matter jurisdiction over challenges

to state court decisions in judicial proceedings.  *See D.C. Court of Appeals v. Feldman*,

460 U.S. 462, 476 (1983)*; see also Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923).

A district court is precluded from exercising jurisdiction over a claim that is "inextricably

intertwined" with a prior state court judgment, "even if those challenges allege that the

state court's action was unconstitutional."  *Feldman*, 460 U.S. at 486.

> [T]he federal claim is inextricably intertwined with the state-court judgment
> if the federal claim succeeds only to the extent that the state court wrongly
> decided the issues before it.  Where federal relief can only be predicated upon
> a conviction that the state court was wrong, it is difficult to conceive the
> federal proceeding as, in substance, anything other than a prohibited appeal
> of the state-court judgment.

---

the Attorney General's Office gave them false information.  (Dkt. 36 at 1.)  Because the
Court recommends denial of the Motion to Amend and dismissal of the Complaint on
other grounds, it does not reach the State's "the State is not a proper party" argument.

[16]    The State has not argued undue delay, bad faith on the part of the moving party, or
unfair prejudice to the opposing party, and the Court finds no evidence of such in the
record.

[17]    In addition to their futility argument, the State argues that the Motion to Amend is
procedurally deficient in two ways: (1) failing to meet the requirements of Local Rule
7.1(a)-(b), and (2) because Henderson failed to specifically show how the proposed
amendment differs from the operative complaint.  (Dkt. 38 at 2.)  Because the Court is
denying Henderson's Motion to Amend on futility grounds, it does not reach this
argument.

*Dodson v. Univ. of Ark. For Med. Sciences*, 601 F.3d 750, 757 (8th Cir. 2010) (quoting

*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring)).  Federal

review of state district court decisions is reserved for the U.S. Supreme Court.  *See* 28

U.S.C. § 1257; *see also Feldman*, 460 U.S. at 486.  The Supreme Court has recently

narrowed the scope of the *Rooker-Feldman* doctrine to "cases brought by state-court

losers complaining of injuries caused by state-court judgments rendered before the

district court proceedings commenced and inviting district court review and rejection of

those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284

(2005).

Here, many of the claims in the Proposed Amended Complaint are related to the

various state court orders issued in connection with the dissolution of Henderson's

marriage, parenting time decisions, and related financial matters.  While Henderson

asserts that this "case is not attempting to overturn any of the family court rulings from

the [state court] case" (Dkt. 24 at 4), some of the relief they seek is tantamount to seeking

reversal of the state court's decisions.  For example, Henderson's itemized financial

losses include combined "Court Fines" for "'stalling,' taking tax right claims" of $7,800,

which appears to be the $800 and approximate monetary value of the state court's

decision ($7,000) to permit Henderson's ex-wife to claim their child as a dependent every

year.  (Dkt. 36 at 13.)  Henderson also seeks reimbursement for "Fines applied by MN

Family Court."  (*Id.* at 18.)  To the extent Henderson seeks reversal of those decisions or

seeks damages as compensation for fines, attorney's fees awards, and the financial

consequences of decisions made by the state court, those claims are barred by the

*Rooker-Feldman* doctrine because granting the relief Henderson requests "effectively reverse the state-court's findings." *City of St. Cloud v. Di Ma Corp.*, 173 F. Supp. 2d 931, 933 (D. Minn. 2001) (quoting *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995)). For these reasons, the Court finds that Henderson's Motion to Amend should be denied to the extent the Proposed Amended Complaint seeks such relief, because the Court lacks subject matter jurisdiction over such claims.

However, Henderson also has alleged injury in the form of limited access to the state court system, which was allegedly caused by state court policies and failures outside of the context of state court orders, such as failures of the Self-Help Desk and the MN Family Legal Help Office.[18]  (Dkt. 36 at 1 ("Plaintiff was repeatedly denied access to accommodations under the Americans with Disabilities Act, despite requesting accommodations and providing proof of their disability.").)  Henderson seeks relief in the form of "reasonably effective access policies for indigent people with invisible disabilities throughout the entirety of the MN Family Court system within the course of 1 year" and training for "MN Family Court staff." (Dkt. 36 at 1, 17-18.)  This suggests that not all of Henderson's claims are so "inextricably intertwined" with the state court's decisions as to parenting time and financial arrangements that they are barred by *Rooker-Feldman*.  *See Wimer v. Greene Cty. Gen. Circuit Court*, No. 3:19CV00021, 2019 WL

---

[18]    The State argues that Henderson believes they were "entitled to a state-provided attorney to accommodate his disabilities and lack of income." (Dkt. 17 at 6.)  It is unclear whether Henderson actually sought a state-provided attorney or believes they were entitled to one, but the gist of their complaints is that they were unable to meaningfully participate in the state court litigation due to their dyslexia, ADHD, and PTSD, which the Court construes as an "access to the courts" claim.

5580961, at *3 (W.D. Va. Oct. 29, 2019) ("Similarly, Wimer alleges injuries that occurred while attempting to file paperwork in various court clerk's offices.  Even if Wimer was seeking to file a suit for the express purpose of collaterally attacking Judge Durrer's order, he has alleged a distinct injury—regarding access to the civil justice system, and allegedly caused by court staff and policy—than that injury purportedly caused by Judge Durrer's ruling.  The court cannot agree that these claims are 'inextricably intertwined' with Judge Durrer's decision.").  Accordingly, the Court concludes that *Rooker-Feldman* does not render all of the Proposed Amended Complaint futile.

**B.    Eleventh Amendment Immunity and § 1983**

The State argues that all of Henderson's official capacity § 1983 claims against the State are barred by the State's Eleventh Amendment immunity.[19]  (Dkt. 17 at 13; *see also* Dkt. 38 at 3.)  In connection with the Motion to Amend, the State argues that the Eleventh Amendment renders Henderson's proposed Due Process, "Equal Access," and First Amendment claims futile.  (Dkt. 38 at 3.)  The State also contends that all of the official capacity § 1983 claims cannot withstand a motion to dismiss because "the State is not a 'person' subject to suit under § 1983."  (Dkt. 17 at 14; *see also* Dkt. 38 at 3.)

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of

---

[19]    Eleventh Amendment immunity does not apply to ADA claims that allege a violation of the Fourteenth Amendment.  *See United States v. Georgia*, 546 U.S. 151, 159 (2006).

any Foreign State." U.S. Const. amend. XI. "Absent waiver by the State or valid

congressional override, the Eleventh Amendment bars a damages action against a State in

federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

"'[A]n unconsenting State is immune from suits brought in federal courts by her

own citizens . . . .'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100

(1984) (quoting *Emp. of Dep't Pub. Health and Welfare, Mo. v. Dept. of Pub. Health and

Welfare, Missouri*, 411 U.S. 279, 280 (1973)). "In the absence of consent a suit in which

the State or one of its agencies or departments is named as the defendant is proscribed by

the Eleventh Amendment." *Id.* (citing *Florida Dept. of Health v. Florida Nursing Home

Assn.*, 450 U.S. 147 (1981) (*per curiam*)); *Alabama v. Pugh*, 438 U.S. 781 (1978) (*per

curiam*). "This jurisdictional bar applies regardless of the nature of the relief sought." *Id.*

(citing *Missouri v. Fiske*, 290 U.S. 18, 27 (1933)).

Minnesota has not waived its Eleventh Amendment immunity from suit in federal

court. *See DeGidio v. Perpich*, 612 F. Supp. 1383, 1388-89 (D. Minn. 1985).

Consequently, all official capacity § 1983 claims against the State are "proscribed by the

Eleventh Amendment." *Pennhurst*, 465 U.S. at 908. Moreover, "neither a State nor its

officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan

Dept. of State Police*, 491 U.S. 58, 71 (1989). Accordingly, the Court finds that

Henderson's proposed § 1983 claims, all of which are asserted against only the State, are

futile.

**C.    Failure to State a Claim**

The State also contends that Henderson's Proposed Amended Complaint is futile for failure to state a claim.  The Court addresses this argument in the context of Henderson's proposed claims below.

**1.    ADA Claim**

The Proposed Amended Complaint asserts an ADA claim based on allegations that the State repeatedly denied Henderson access to accommodations in the state court action "despite requesting accommodations and providing proof of [their] disability." (Dkt. 36 at 1.)  The State contends that Henderson's proposed ADA claim is futile for failure to state a claim because the public court records establish that Henderson "undisputedly had access to the Self-Help Desk and ADA Coordinator," the ADA does not require a court to provide a litigant with counsel to increase the efficacy of their advocacy, and Henderson "does not describe what other purported 'auxiliary aids' would have reasonably assisted [them] in accessing the state court."  (Dkt. 38 at 4.)

Title II of the ADA prohibits discrimination against "qualified individuals with disabilities" in the provision and administration of public services, programs, and activities.  *See* 42 U.S.C. § 12132.  To establish a violation of Title II of the ADA, a plaintiff must show that:

> 1) he is a qualified individual with a disability; 2) he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the entity; and 3) that such exclusion, denial of benefits, or other discrimination, was by reason of his disability.

*Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998).

Eleventh Amendment immunity does not shield States from claims brought under Title II of the ADA that implicate the fundamental right of access to the courts. *See Tennessee v. Lane*, 541 U.S. 509, 530-34 (2004). However, "Title II does not require States to employ any and all means to make judicial services accessible . . . [i]t requires only 'reasonable modifications' that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service." *Id.* at 530-31.

In the instant case, Henderson alleges that they were a person with "invisible disabilities . . . including dyslexia, ADHD and PTSD." (Dkt. 36 at 3.) First, Henderson identifies certain adverse state court orders modifying parenting time, awarding attorney's fees/fines, and modifying the Judgment and Decree to permit Henderson's ex-wife to claim the minor child on her tax returns every year as instances of discrimination. Their allegations that those orders were discriminatory fall within the *Rooker-Feldman* doctrine because a determination that they were discriminatory would be tantamount finding that the state court was wrong to make those decisions. Consequently, the ADA claim, to the extent it is based on such allegations, is futile.

Second, Henderson alleges that they were not properly informed by the judges or other participants in the state court system of the ADA Coordinator or that accommodations might be available and allege that the state court's reliance on written communications impeded their ability to litigate their case. The Court construes this as an "access to the courts" theory rather than Henderson simply disputing the state court rulings. Having carefully considered the Proposed Amended Complaint and the public

records, the Court concludes that Henderson has failed to state an "access to the courts" claim under the ADA. This is because, as explained below, Henderson has not plausibly alleged that they were excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or otherwise discriminated against by the entity.

Several U.S. Courts of Appeals have found that an ADA Title II plaintiff failed to state an "access to the courts" claim where the plaintiff made filings in connection with the case, appeared at hearings, and had her arguments considered by the court. *See, e.g.*, *Bedford v. Michigan*, 722 F. App'x 515, 520 (6th Cir. 2018) ("Plaintiff was not denied access to the court or prevented from participating in the proceeding either pro se or with a lawyer. Plaintiff represented herself competently at numerous points throughout the state-court proceeding. The number of filings made and hearings held in the proceeding belie plaintiff's allegation that she was denied meaningful access to the courts. And the state court did make reasonable modifications to its proceedings in response to plaintiff's other requests.") (affirming dismissal for failure to state a claim); *McCauley v. Georgia*, 466 F. App'x 832, 837 (11th Cir. 2012) ("Moreover, McCauley was able to file both a motion for summary judgment and a motion for reconsideration in that case. The court considered the motion for summary judgment on the merits before ultimately denying it, and the court denied the motion for reconsideration. Thus, McCauley was able to access the court and have her case heard on the merits, and she has not shown actual injury or stated an access to the court claim under the ADA.") (citations omitted) (affirming dismissal under Rule 12(b)(6)); *see also Johnson v. Am. Sec. Ins. Co.*, 392 F. App'x 838, 841 (11th Cir. 2010) ("In fact, Johnson was given ample opportunity to present her

complaint, respond to American Security's motion to dismiss, and present post-judgment motions. The record shows that the court considered all of these arguments. Accordingly, she has not shown that she was denied access to the court based on her disability.").

Here, the public records and Henderson's Proposed Amended Complaint make clear that Henderson was able to competently represent themself during the state court proceedings. The record reflects that Henderson or their counsel were present at all hearings except the July 1, 2015 hearing where the state court ordered Henderson to pay the $7,100.46 associated with the sale of the house, that Henderson participated in mediations, that Henderson filed oppositions to their ex-wife's motions and brought their own motions, and that Henderson's arguments were considered by the Court. (*See, e.g.*, Dkt. 18-1, Ex. O (Henderson's motion to relocate child); *id.*, Ex. J at 117-20 (considering Henderson's motion to relocate); *id.*, Ex. J at 115-17 (appointing *guardian ad litem* due to Henderson's assertions about their ex-wife's home as well as due to ex-wife's concerns about Henderson's home); *id.*, Ex. L (Henderson's opposition to ex-wife's motion for the right to claim their minor child as a dependent on her tax returns); *id.*, Ex. D at 38 (state court considering Henderson's arguments that "he structures his finances based on the understanding that he will be claiming the child as a dependent on tax returns during odd-numbered years" and that "Petitioner be allowed to claim minor child starting in 2016 tax returns only until the outstanding balance of $7,220.46 is satisfied by the added income caused by the dependency exemption on Petitioner's tax returns"); *id.*, Ex. N (Henderson's March 2016 parenting time motion); *id.*, Ex. E at 42-44 (considering

Henderson's parenting time arguments); *id.*, Ex. F at 51-60 (considering Henderson's parenting time arguments, denying Henderson's motion for a week on/a week off schedule, but giving Henderson additional time during their weekends with their child).) Henderson has not identified any argument in the Proposed Amended Complaint that they wanted to make during the state court matter but were precluded from doing so due to their dyslexia, PTSD, or ADHD. Further, while Henderson did not succeed on many of their state court arguments, the public record is clear that they were able to represent themselves with reasonable effectiveness. While Title II requires the State to take "reasonable measures" to remove "barriers to accessibility," it does not require the State "to employ any and all means to make judicial services accessible to persons with disabilities." *See Lane*, 541 U.S. at 530-31 (citing 42 U.S.C. § 12131(2)). Because the undisputed public records show that Henderson was able to competently represent themself in connection with the state court proceedings, their proposed ADA claim is futile.

The Court will address a few specific instances of alleged discrimination identified with Henderson. First, Henderson challenges the reduction in their parenting time to every other weekend. (Dkt. 36 at 2, 4.) Setting aside the fact that the ADA claim is barred by *Rooker-Feldman* because Henderson claims this decision was "<u>illegal</u>" because Henderson still maintained "50/50 custody," Henderson admits (and the public records confirm), that the *guardian ad litem* recommended this change. (*Id.*) Further, the Court considered Henderson's opposition to their ex-wife's motion to change parenting time (Dkt. 18-1, Ex. O) and as a result ordered the *guardian ad litem* to investigate both

parent's homes, not just Henderson's (*id.*, Ex. J at 116). Henderson was represented by counsel at the December 28, 2014 hearing on their ex-wife's motion for a modification in parenting time. (*Id.*, Ex. C at 26.) The Court ordered a temporary modification of parenting time, and set a follow-up hearing for July 1, 2015. (*Id.*, Ex. C at 32.) Henderson admits in the Proposed Amended Complaint that they "missed/misplaced" the change of time notification and arrived late for the hearing where they were told they had to wait for the state court's decision. (Dkt. 36 at 4.) To the extent Henderson suggests that the state court should have accommodated them by waiting indefinitely for them to show up on the date of the hearing or held a second hearing before rendering its decision, "Title II does not require States to employ any and all means to make judicial services accessible" or require accommodations that would "fundamentally alter the nature of the service provided." *Lane*, 541 U.S. at 511. Moreover, Henderson brought two other motions to modify parenting time after the August 27, 2015 order making the temporary change permanent, one of which resulted in a minor change that increased Henderson's parenting time. (*See* Dkt. 18-1, Exs. G, E, F at 60-61 (extending Henderson's weekends).) Henderson also successfully negotiated changes to the holiday and vacation parenting time schedules at that time. (*Id.*, Ex. F at 49.) The public record therefore confirms that Henderson was able to challenge the parenting time decision and effectuate desired changes.

Henderson also identifies the state court's decision to require them to pay $7,100.46 in costs associated with the sale of the family home and awarding attorney's fees to their ex-wife and the subsequent decision granting their ex-wife's motion to claim

their minor child as a dependent every year (rather than every other year) due to their failure to pay those amounts as discriminatory. (Dkt. 36 at 2.) In their opposition to their ex-wife's motion in state court, Henderson argued that they were counting on the tax return money, that they were dyslexic and that the "fine in question is imposed due to stalling," and that they had "asked the court for an accommodation. I am asking the fine be put to rest." (Dkt. 18-1, Ex. L at 150.) With respect to the "7,000," Henderson did not attribute their failure to pay that money to any disability. (*Id.*) Rather, Henderson argued that their ex-wife should not have incurred $14,000 in connection with the sale and argued that they had given up their right to alimony. (*Id.*) Other than requiring the $160 fine be "put to rest," Henderson did not request any particular accommodation or indicate to the state court that their failure to pay the $7,000 was due to an inability to understand the transaction or their obligations. (*See id.*)

In the subsequent state court order permitting Henderson's ex-wife to claim their minor child, the state court explained that it was granting her motion because Henderson had not paid the $7,100.45 or attorney's fees. (*Id.*, Ex. D at 37-39.) The Court also noted:

> Respondent requested an accommodation from the Court due to his inability to represent himself. He stated that he suffers from a variety of learning disabilities that impair his ability to represent himself. The Court advised him to consult with an attorney and to contact the self-help center for assistance with completing and filing any paperwork.

(*Id.*, Ex. D at 38.) While Henderson may have been unhappy with this response, it would "fundamentally alter," *see Lane*, 541 U.S. at 511, the nature of the judicial system if state courts were required by the ADA to relieve parties of financial obligations set forth in

those courts' orders.  The Court also notes that Henderson's attorney sought reconsideration of the attorney's fees order, and that it was Henderson's attorney's failure to follow the rules (not Henderson's dyslexia, PTSD, or ADHD) that caused the denial of the motion.  (Dkt. 18-1, Ex. C at 31.)

Similarly, from Henderson's Proposed Amended Complaint, it appears that they believed they should not have been required to communicate with the state court in writing, receive notifications in writing, or fill out paperwork, and that evidence that was not properly notarized should have been admitted.  (*See* Dkt. 36 at 2-3.)  It also appears that Henderson believes the state court should not have accepted deficient paperwork submitted by them or should have advised them that it did not meet evidentiary requirements.  (*See id.*). Eliminating these requirements and requiring the state court to advise litigants in advance of court hearings when their paperwork did not comply with evidentiary rules would certainly "fundamentally alter" the nature of the judicial systems, including because the state court would effectively be acting as a lawyer for the disabled litigant; consequently Henderson's complaints about those requirements do not plausibly state a claim for relief under Title II.

The Court turns to Henderson's allegations that they were treated unfairly with respect to objections and oral argument time.  (*See*, *e.g.*, Dkt. 36 at 3.)  Even assuming these allegations of differential treatment are true, as the Court is required to do on a motion to amend, Henderson has not plausibly alleged that any difference in treatment was due to their ADHD, dyslexia, or PTSD, nor have they identified any arguments that they were prevented from making to the state court due to the alleged differential

treatment.  Rather, those allegations amount to "unadorned, the-defendant-unlawfully-harmed-me-accusation[s]" that do not sufficiently state a claim.  *See Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted).  Indeed, as discussed above, the public records indicate that Henderson's arguments were considered by the state court.

Finally, to the extent Henderson alleges that they were punished for "stalling," that the state court regarded Henderson as unwilling to put forth effort due to their difficulties with paperwork, or makes similar allegations about how they were viewed by the state court due to the alleged disabilities, those allegations are the types of "conclusory statements" that "do not suffice" to state a claim.  *See Iqbal*, 556 U.S. at 678.

In sum, the Court concludes that Henderson's proposed ADA claim is futile because it is barred (at least in part) by *Rooker-Feldman* and because Henderson has not stated a plausible claim for relief.  Accordingly, the Court recommends denial of Henderson's Motion to Amend as to the proposed ADA claim.

### 2.    Due Process Claim

The Proposed Amended Complaint asserts a Due Process claim under the Fifth and Fourteenth Amendments and for "Arbitrary Vagueness."  (Dkt. 36 at 4-5.)  Though unclear, it appears Henderson asserts that a "lack of Due Process resulted in the loss of meaningful time with their child (liberty) for 2+ years, the loss of their job and the loss of their property."  (*Id.*)

Under the Fourteenth Amendment, no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The first step in determining if there has been a due process violation is determining if there is a

protected life, liberty, or property interest. *See Movers Warehouse, Inc. v. City of Little Canada*, 71 F.3d 716, 718 (8th Cir. 1995). "[W]here no such interest exists, there can be no due process violation." *Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997). This is true whether the due process claim is a procedural or substantive one. *See Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999) (citing *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 445-46 (8th Cir. 1995)).

Procedural due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *see also Boner v. Eminence R-1 School Dist.*, 55 F.3d 1339, 1342 (8th Cir. 1995) ("Due process secures only an opportunity to be heard, not guaranteed or probable success."). Where a plaintiff has not identified what liberty or property interest they were deprived of, "any procedural due process claim necessarily fails." *Bealieu v. Ludeman*, 690 F.3d 1017, 1047 (8th Cir. 2012).

The substantive due process component of the Fourteenth Amendment protects individuals against certain government actions, regardless of the procedures used to implement them. *See Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 816 (8th Cir. 2011). To show a violation of substantive due process, the "plaintiff must demonstrate both that the official's conduct was conscience-shocking, and that the official violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Hall v. Ramsey Cty.*, 801 F.3d 912, 917 (8th Cir. 2015) (citations and quotation marks omitted).

"To satisfy the conscience-shocking standard, a government official's conduct must be 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.* at 917-18 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847-48 n. 8 (1998)). Conduct that is "'intended to injure [an individual] in some way unjustifiable by any governmental interest is . . . most likely to rise to the conscience-shocking level.'" *Id.* at 918 (alteration and omission in original) (quoting *Lewis*, 523 U.S. at 849). "But when the acts of a government official" constitute "'something more than negligence but less than intentional conduct' the 'totality of the facts in a given case' must be assessed to determine whether behavior is conscience shocking." *Id.* (footnote omitted) (quoting *Lewis*, 523 U.S. at 849, 850).

In the Proposed Amended Complaint, it appears Henderson argues that they have a protected liberty interest in "the loss of meaningful time with their child." (Dkt. 36 at 5.) While the Court recognizes that parents have a due process right to a hearing before children are removed from their custody, *see Stanley v. Illinois*, 405 U.S. 645, 658 (1972), the Proposed Amended Complaint has not plausibly alleged that Henderson was deprived of due process. As explained above in connection with the proposed ADA claim, the record demonstrates that Henderson was provided the opportunity to be heard with respect to parenting time and other matters during the state court action. Consequently, Henderson's proposed Due Process claim, to the extent it is based on procedural due process, is futile.

To the extent Henderson has alleged a substantive due process violation under the Fourteenth Amendment, the Court finds that the Proposed Amended Complaint also fails

to state a claim.  The Supreme Court has "recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children."  *Troxel v. Granville*, 530 U.S. 57, 66 (2000).  Assuming for purposes of the Motion to Amend that Henderson's complaints regarding the state court's parenting time decisions constitute allegations that the state court violated that fundamental right, Henderson has failed to allege facts suggesting that the State's conduct was "'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"  *Hall*, 801 F.3d at 917-18 (quoting *Cty. of Sacramento*, 523 U.S. at 847-48 n. 8).  The Proposed Amended Complaint lacks facts that demonstrate the State's conduct was intended to injure Henderson in an unjustifiable way, *id.* at 918 (alteration and omission in original) (quoting *Lewis*, 523 U.S. at 849), and the public records indicate that Henderson's parenting time motions and arguments were carefully considered by the state court, and at times resulted in changes favorable to Henderson.  Therefore, to the extent Henderson asserts a substantive due process claim, it is futile.

For these reasons, the Court finds that Henderson's proposed Due Process claim, whether procedural, substantive, or both, could not withstand a Rule 12(b)(6) motion and is therefore futile.  As discussed above in Section III.B, the proposed Due Process claim is also futile because the State is entitled to Eleventh Amendment immunity and is not a person that can be sued within the meaning of § 1983.

### 3.    First Amendment Claim

The proposed First Amended Complaint alleges a First Amendment claim under § 1983 alleging a "MN Family Court Violation of the 1st Amendment."  (Dkt. 36 at 7-8.)

The State argues Henderson's First Amendment claim fails because it "does not describe how Plaintiff's free speech, association, or religious freedoms were impacted."  (Dkt. 38 at 5.)

Though unclear, it appears that Henderson's proposed First Amendment claim relates to the *guardian ad litem*'s findings in the state court action that "despite the [child's] clean, safe home and good relationship" with Henderson, the *guardian ad litem* recommended that the child care schedule be changed to every other weekend, which Henderson claims was "illegal under the existing and unchallenged child custody agreement."  (Dkt. 36 at 8.)  The Court cannot discern from these allegations which First Amendment rights were allegedly violated, nor has Henderson alleged facts showing how the State violated any of Henderson's First Amendment rights.  Rather, it appears that Henderson is challenging the outcome, that is, the change in parenting time resulting from the *guardian ad litem*'s report.  Henderson's First Amendment claim does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678.  Accordingly, the Court finds that Henderson's proposed First Amendment claim is futile.  Further, as discussed above in Section III.B, the proposed First Amendment claim is also futile due to Eleventh Amendment immunity and because the State is not a person that can be sued within the meaning of § 1983.

### 4.    "Equal Access" Claim

Henderson asserts an "Equal Access" claim under the Fourteenth Amendment. (Dkt. 36 at 5-7.)  Construing the Proposed Amended Complaint liberally, as the Court is

required to do for pro se plaintiffs, *Solomon*, 795 F.3d at 786, the Court construes this as an Equal Protection claim under § 1983.

The Equal Protection Clause requires state actors to treat similarly situated persons alike, but state actors do not violate the Equal Protection Clause if they treat dissimilarly situated persons dissimilarly. *Ganley v. Minneapolis Park & Recreation Bd.*, 491 F.3d 743, 747 (8th Cir. 2007) (internal quotations and citations omitted). "As a threshold matter, in order '[t]o state an equal protection claim, [a plaintiff] must have established that they was treated differently from others similarly situated to them.'" *Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004) (quoting *Johnson v. City of Minneapolis*, 152 F.3d 859, 862 (8th Cir. 1998)).

Henderson alleges that they were treated unfairly because their paperwork did not meet certain evidentiary standards (such as being the paperwork not being properly notarized), due to their indigent status, because they arrived late to proceedings due to missed change-of-time notices, and because the State thought Henderson "'wasn't trying.'" (Dkt. 36 at 5-7.) Henderson also alleges that opposing counsel submitted ex parte motions in violation of the parties' agreement and that they were not permitted to engage in "required Mediation Sessions" of which they were not aware. (*Id.* at 5-6.) Relying on *Peck v. Hoff*, 660 F.2d 371, 372 (8th Cir. 1981), the State argues that Henderson has failed to "plead that [their] treatment was 'invidiously dissimilar' to the treatment received by similarly-situated individuals." (Dkt. 38 at 5.)

Although Henderson identified a number of difficulties that indigent litigants face (including lack of access to technology and information resources, regular mail delivery,

and access to a vehicle), Henderson has not alleged any facts that would support an inference that they were treated differently from similarly situated individuals. Henderson has not alleged, for example, facts suggesting that non-indigent litigants who arrived late for court hearings were treated differently than they were, nor have they alleged facts suggesting that other litigants were permitted to rely on paperwork that did not comply with evidentiary rules while they were not. Finally, they have not alleged any facts suggesting purposeful or intentional discrimination by the State. *See Klinger v. Dep't of Corrections*, 31 F.3d 727, 733 (8th Cir. 1994) ("A fundamental principle of equal protection is that the Constitution only prohibits intentional or purposeful discrimination by the state."). For these reasons, Henderson's proposed Equal Protection claim could not withstand a Rule 12(b)(6) motion, and is futile. Further, as discussed above in Section III.B, Henderson's proposed Equal Protection claim is also futile due to Eleventh Amendment immunity and because the State is not a person that can be sued within the meaning of § 1983.

### 5. Title IX Claim

Henderson also asserts a Title IX claim in the Proposed Amended Complaint. (Dkt. 36 at 8-9.) The State argues that the Title IX claim fails as a matter of law and that Henderson's reliance on Title IX is "misplaced because Title IX applies to gender discrimination in education, only." (Dkt. 38 at 5.)

Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. §

1681.  "Title IX addresses discrimination on the basis of sex in any educational program that receives federal funding."  *Pearson v. Logan Univ.*, 937 F.3d 1119, 1124 (8th Cir. 2019) (citing *Roe v. St. Louis Univ.*, 746 F.3d 874, 881 (8th Cir. 2014)).

Henderson's proposed Title IX claim fails to state a claim because they have not alleged any facts relating to discrimination in an educational program or activity.  In support of their claim, Henderson asserts that the Minnesota Family Court repeatedly discriminated against women.  (Dkt. 36 at 9.)  Henderson also alleges that their ex-wife received preferential treatment from the Minnesota Family Court, including that it "[g]enerally assumed that the mother of [Henderson's] child was a better caregiver" and that an article reviewing the Guardian ad Litem's Office "presented evidence that the Guardian ad Litem discriminated against fathers."  (*Id.* at 8-9.)  But they have not pleaded any facts that plausibly allege that they were discriminated against by any educational program or activity that receives federal funding subject to 20 U.S.C. § 1681.  Accordingly, Henderson's Title IX claim could not withstand a Rule 12(b)(6) motion and is futile.

* * *

In sum, the Proposed Amended Complaint is futile for the reasons stated above.  The Court therefore recommends denying Henderson's Motion to Amend the Complaint.

## IV.    DEFENDANT'S MOTION TO DISMISS

Because the Court recommends denying Henderson's Motion to Amend (Dkts. 24, 36) for the reasons stated above, the Court considers the State's pending Motion to Dismiss (Dkt. 14) the operative Complaint (Dkt. 1).

40

As described above, the Complaint listed "Title 2 ADA, 14th Amendment, and Due Process" as the basis for federal jurisdiction. (*Id.* at 3.) It appears that Henderson asserts only two claims in the Complaint: (1) an ADA claim; and (2) a Due Process claim. The State moves to dismiss each of Henderson's claims for the same reasons as discussed above in connection with Henderson's Motion to Amend.[20] The Court addressed the State's arguments below.

## A.    *Rooker-Feldman* Doctrine

The State contends that the Complaint should be dismissed pursuant to *Rooker-Feldman* doctrine because the allegations in the Complaint relate exclusively to Henderson's state court rulings. (Dkt. 17 at 11.) As discussed above in connection with the Motion to Amend, the Court is not persuaded that Henderson seeks only to revisit the state court's rulings. To the extent Henderson does seek reversal of state court rulings, or compensation for fines, attorney's fees, or other monetary consequences of the state court's decisions, the Court concludes the claim is barred by *Rooker-Feldman*, and recommends dismissal on that ground.

## B.    Eleventh Amendment Immunity and § 1983

The State argues that all official capacity § 1983 claims against the State must be dismissed because of Eleventh Amendment immunity and because the State is not a person subject to suit under § 1983. (Dkt. 17 at 13.) The State argues it "has not waived

---

[20]    As in its opposition to the Motion to Amend, the State contends that Henderson's Complaint should be dismissed because the State is not a proper party to this lawsuit and because the doctrine of absolute judicial immunity bars Henderson's claims. The Court does not reach these arguments for the same reasons it did not address them in the context of the Motion to Amend.

its Eleventh Amendment immunity from suit in federal court" because "the State is not a 'person' subject to suit under § 1983." (*Id.* at 14.) For the reasons given in connection with the Motion to Amend, the Court agrees that Henderson's Due Process claim is barred on those grounds. Consequently, the Court recommends dismissal of the Due Process claim.

**C.     Failure to State a Claim**

**1.     ADA Claim**

In the Complaint, Henderson asserts an ADA claim based on allegations that the State denied them access to accommodations in the state court action. (Dkt. 1-1 at 1.) Specifically, Henderson alleges that the State failed to provide accommodation even though they suffer from PTSD, dyslexia, and ADHD (*id.* at 1) and that their child was taken due to a lack of accommodation (*id.* at 2). Henderson also lists statements allegedly made by judges denying them accommodations or stating that their dyslexia may bar them from being a "fit parent."[21]  (*Id.*) Even accepting as true that the judges made the alleged statements, as the Court is required to do on a motion to dismiss, as discussed in detail in Section III.C.1, the public records reflect that Henderson was able to bring motions and oppose motions brought by their ex-wife, that Henderson's arguments were considered by the state court, and that state court considered Henderson's arguments in connection with parenting time and other issues. Accordingly,

---

[21]     Henderson also complains of statements made by legal counsel and alleges that they were asked by a judge "how are you a 6ft man afraid of a 5ft woman." (Dkt. 1-1 at 2.) Henderson has not explained how the judge's question relates to their claim under the ADA, and the statements allegedly made by lawyers are not attributable to the State.

Henderson has not stated a plausible "access to the courts" ADA claim. Further, as discussed in section III.A, to the extent Henderson is challenging the state court's decisions (such as the reduction in their parenting time) in their ADA claim, *Rooker-Feldman* bars them from doing so. Accordingly, the Court recommends dismissal of Henderson's ADA claim.

### 2. Due Process Claim

The Complaint asserts a Due Process claim under the Fourteenth Amendment. As discussed in connection with the proposed Due Process claim, Henderson has failed to state a procedural or substantive due process claim. The record reflects that Henderson was able to make their arguments with respect to parenting time and that those arguments were considered by the state court. As to any substantive due process claim, while Henderson claims that the Minnesota Family Court "took advantage of a couple pinned them against each other then watched the chaos ensue" (Dkt. 1-1 at 3), the Complaint fails to allege any facts (nor are any facts found in the public records) plausibly supporting this assertion, or otherwise permitting the Court to infer that any conduct by the State was "'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Hall*, 801 F.3d at 917-18 (quoting *Cty. of Sacramento*, 523 U.S. at 847-48 n. 8). Accordingly, the Complaint fails to state a substantive due process claim.

For these reasons, the Court recommends that Henderson's Due Process claim be dismissed.

\* \* \*

In sum, the Court recommends granting the Motion to Dismiss in its entirety.

## V.    HENDERSON'S REQUEST FOR INJUNCTIVE RELIEF

In the May 23, 2019 Order, the Court deferred Henderson's request for preliminary injunctive relief in view of Henderson's Motion to Amend and anticipated re-filed Motion.  (*See* Dkt. 29 at 2.)  While the Court recommends granting Defendant's motion to dismiss, it addresses Henderson's request, which seeks injunctions in various forms.  (Dkt. 24.)  The State contends that none of the factors set forth in *Dataphase Sys., Inc. v. CL Sys., Inc*., 640 F.2d 109 (8th Cir. 1981), favor granting Henderson relief.  (*See* Dkt. 30 at 5.)  For the reasons stated below, the Court finds that Henderson's request for preliminary injunctive relief should be denied.

### A.    Legal Standard

In *Dataphase*, the Eighth Circuit established four factors the Court should consider when determining whether preliminary injunctive relief is appropriate: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest."  640 F.2d at 114.  "[N]o single factor is determinative."  *Id.*  "The party seeking injunctive relief bears the burden of proving these factors."  *CDI Energy Services v. West River Pumps, Inc.*, 567 F.3d 398, 402 (8th Cir. 2009) (quoting *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006)).  The Court addresses each *Dataphase* factor in turn.

**B.    Analysis**

**1.    Irreparable Harm**

The first factor asks the Court to consider the threat of irreparable harm to Henderson. *See Dataphase*, 640 F.2d at 114. "[F]ailure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction." *Adam-Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 299 (8th Cir. 1996) (quoting *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987)); *see also Dataphase*, 640 F.2d at 114 n.9 ("[T]he absence of a finding of irreparable injury is alone sufficient ground for vacating the preliminary injunction."). The party seeking preliminary injunctive relief must "show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (quoting *Iowa Utilities Bd. v. Fed. Commc'ns Comm'n*, 109 F.3d 418, 425 (8th Cir. 1996)).

Here, the claims asserted in Henderson's Complaint are primarily based on the State's conduct that occurred in the past. (*See generally* Dkt. 1-1.) Henderson has not established a threat of irreparable harm or that a preliminary injunction would "lessen any possible **ongoing** damages." *CDI Energy Servs.*, 567 F.3d at 403 (emphasis added) (finding that the "[moving party] failed to show that an injunction would actually serve to lessen any possible ongoing damages . . . ."). In fact, Henderson has stated that they now have the parenting time schedule they wanted (Dkt. 25 at 4-5), and to the extent they seek damages, preliminary injunctive relief on their claims would not be appropriate because

Henderson's claims have an "adequate remedy at law." *See Adam-Mellang*, 96 F.3d at 300.

In their brief in support of their request for injunctive relief, Henderson requests various forms of injunctive relief related to city citations, city inspections, "police harassment," the revocation of Henderson's driver's license, and a bond placed on Henderson's van.  (Dkt. 24 at 2.)  Henderson has not identified any irreparable harm arising from any of the alleged conduct.  Moreover, to the extent Henderson seeks relief in the form of the release of the audio files from the state court proceeding to the "Federal Judiciary" and that the "Federal Judiciary" transcribe those recordings, those audio files are presumably available to Henderson themself.[22]

Therefore, the Court finds that the first factor weighs against Henderson's request for preliminary injunctive relief.

### 2.    Probability of Success

The Eighth Circuit has observed that the probability of success factor is the most significant.  *See Barrett v. Claycomb*, 705 F.2d 315, 320 (8th Cir. 2013); *see also CDI Energy Srvs.*, 567 F.3d at 402 ("[T]he absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied . . . .")  Unless the preliminary injunction seeks to enjoin "government action based on presumptively reasoned democratic processes," the Court should ask whether the party requesting a

---

[22]    Moreover, no legal authority requires this Court to obtain or transcribe state court audio files for a federal court litigant.

preliminary injunction has a "fair chance of prevailing." *Planned Parenthood Minn., N.S., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008).

For the reasons discussed in detail above, the Court has recommended denial of Henderson's Motion to Amend and granting of the State's Motion to Dismiss. Accordingly, the Court finds that this factor weighs heavily against Henderson's request for preliminary injunctive relief. Moreover, to the extent the injunctive relief Henderson seeks relates to their driver's license, city citations and inspections, and a bond placed on their van, that relief is not attached to their ADA and Due Process claims against the State, and Henderson cannot show a likelihood of success on claims that they have not brought. This factor weighs against preliminary injunctive relief.

### 3.    Balance of Harms

With respect to the balancing of the harms, the Court should balance "the threat to each of the parties' rights and economic interests that would result from either granting or denying the preliminary injunction." *CPI Card Grp., Inc. v. Dwyer*, 294 F. Supp. 3d 791, 819 (D. Minn. 2018) (quoting *Cenveo Corp. v. S. Graphic Sys., Inc.*, No. 08-5521 (JRT/AJB), 2009 WL 161210, at *4 (D. Minn. Jan. 22, 2009)).

Here, Henderson has not provided the Court with facts to suggest that denying their preliminary injunction would pose a threat to their rights and economic interests. (*See generally* Dkt. 24.) The disruption to the State and other actors should the Court grant their requested relief, including prohibiting city inspections, lifting a bond for no apparent legal reason, and requiring the State to take action with respect to Henderson's

driver's license without any legal authority, is apparent.  Therefore, the Court finds that this factor weighs against Henderson's request for preliminary injunctive relief.

### 4. Public Interest

The fourth and final factor asks the Court to consider the public's interest.  *See Dataphase*, 640 F.2d at 114.  The State argues that Henderson has not alleged an applicable public interest supporting their requested relief.  (Dkt. 30 at 6.)  The Court agrees.  Henderson has not identified any public factor that weighs in favor of granting Henderson's requested injunctive relief.  Rather, the relief sought appears to be personal to Henderson.  Therefore, the Court finds that the fourth factor weighs against Henderson's request for preliminary injunctive relief.

* * *

In sum, the Court finds that all four factors from *Dataphase* weigh against granting Henderson's request for preliminary injunctive relief.  Accordingly, the Court recommends denying Henderson's request for preliminary injunctive relief.

### VI.    RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT**:

1. Plaintiff Edward A. Henderson's Motion to Amend the Complaint (Dkts. 24, 36) be **DENIED**;

2. Defendant State of Minnesota's Motion to Dismiss (Dkt. 14) be **GRANTED**;

3. Plaintiff Edward A. Henderson's claims be **DISMISSED WITHOUT PREJUDICE**; and

4. Plaintiff Edward A. Henderson's Request for Preliminary Injunctive Relief be

   **DENIED**.

DATED: December 30, 2019                *s/Elizabeth Cowan Wright*
                                        ELIZABETH COWAN WRIGHT
                                        United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).